Michele Anderson-West (9249)
**STAVROS LAW P.C.**
8915 South 700 East, Suite 202
Sandy, Utah 84070
Tel: (801) 758-7604
Fax: (801) 893-3573
michele@stavroslaw.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH-SOUTHERN DIVISION

| | |
|---|---|
| LEANNE CROWE and LEVI CROWE, | |
| Plaintiffs, | **COMPLAINT** |
| v. | (JURY DEMAND) |
| SRR PARTNERS, LLC dba SORREL RIVER RANCH RESORT & SPA, JJ'S MERCANTILE, LLC and ELIZABETH RAD, | Case No. 4:21-cv-00108-DN |
| | Judge David Nuffer |
| Defendants. | |

Plaintiffs Leanne Crowe ("Leanne") and Levi Crowe ("Levi"), by and through their undersigned counsel, bring this complaint against Defendants for causes of action under the Americans with Disabilities Act, 42 USC §12101, et seq ("ADA"), the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* ("FLSA") and unjust enrichment, alleging as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiffs, at all times relevant herein, resided in Grand County, Utah or Weld County, Colorado.

2. Defendant SRR is a for-profit organization with its principal place of business located in Grand County, Utah.

1

3. At all times relevant herein, SRR employed more than 15 full-time employees and is an enterprise engaged in commerce or in the production of goods for commerce, which, upon information and belief, experienced annual gross sales in excess of $500,000.

4. Defendant JJ's is a single member limited liability corporation with its principal place of business located in Grand County, Utah. Elizabeth Rad is the only member of JJ's.

5. JJ's is an enterprise engaged in commerce or in the production of goods for commerce and, upon information and belief, experienced annual gross sales in excess of $500,000.

6. Defendant Rad is an individual who upon information and belief, resides in New York City, New York and is the owner of SRR and JJ's.

7. This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §1331.

8. This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

9. The employment practices alleged to be unlawful were committed in Grand County, Utah, which is within the jurisdiction of the U.S. District Court for the District of Utah, Southern Division. Accordingly, venue is proper pursuant to 28 U.S.C. §1391.

10. Leanne exhausted her administrative remedies having filed a charge of discrimination and retaliation with the Utah Labor Commission Antidiscrimination and Labor Division and received a Notice of Right to Sue from the Equal Employment Opportunity Commission (EEOC) dated August 3, 2021.

11. This action is commenced within 90 days of Leanne's receipt of the EEOC Notice of Right to Sue.

12. At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted, at all times relevant herein, in the course and scope of their employment with and for Defendants.

## FACTUAL ALLEGATIONS

13. SRR offered Leanne a position to work as its HR Director, via letter dated March 18, 2020. The offer letter specified Leanne's salary of $95,000 per year, free housing until she and Levi could find their own housing and free boarding for two horses.

14. Leanne accepted SRR's offer and in April 2020, moved from Craig, Colorado to Moab, Utah with her two children. Her first day of work for SRR was April 6, 2020.

15. When Leanne and Levi visited SRR for Leanne's interview, Levi asked the SRR General Manager, Dan Waters ("Waters"), if SRR had any available positions for him. At that time, Levi was employed as a Deputy Sheriff and in addition to the skills he learned through being a Sheriff, had a lot of experience with maintenance and working with heavy machinery.

16. Waters offered Levi a position doing maintenance for SRR, being paid $26.54 per hour, on the spot. Levi accepted the offer under the conditions of him first selling his and Leanne's house in Craig, Colorado and giving at least two weeks' notice to the Sheriff's Office.

17. Prior to their house being sold, Waters asked Levi to start work for SRR beginning in May 2020. Levi commuted back and forth from Craig, Colorado to Moab, Utah until their house sold in mid-June 2020.

18. The months of May, June, July and August 2020 went by very quickly for Leanne and Levi. Both were given praises as to their performances and both worked between 40 and 60 hours per week.

19. A few days after she started working as SRR's HR Director, Rad told her that she also wanted Leanne to work for JJ's as its HR Director.

20. JJ's is a legally separate entity from SRR, with its own payroll and own tax ID number.

21. Rad did not have Leanne complete an I-9 for JJ's or any other paperwork pertaining to the HR duties she was performing on behalf of JJ's.

22. Since Rad owns both SRR and JJ's, Leanne did not argue about the extra work initially.

23. Between April 2020 and October 2020, Leanne worked full time for SRR, for which she was paid a salary of $95,000 per year.

24. Leanne's and Levi's paychecks and W-2'were issued by SRR.

25. Leanne worked approximately 480 hours on behalf of JJ's between April 2020 and October 2020. Leanne should have been paid $47.50 per hour for each hour she worked on behalf of JJ's or approximately $22,800. JJ's, however, paid Leanne nothing.

26. On September 13, 2020, Leanne was feeling unwell and went to the ER in Moab, Utah. She was diagnosed with a pulmonary embolism (blood clot) in her lungs. During the examination, imaging showed a large mass in Leanne's lower pelvis. Leanne was referred to follow up with a gynecologist.

27. Leanne called a hospital in Grand Junction, Colorado-but the soonest appointment was several weeks out. She then tried UC Health and scheduled an appointment for Wednesday, September 16, 2020. During that examination, the doctor confirmed a football sized mass that

was likely a tumor on her ovaries and told Leanne that it could be ovarian cancer. She referred Leanne to an oncologist who saw Leanne in Denver, Colorado two days later.

28. The oncologist examined Leanne and told her that she suspected ovarian cancer. The oncologist scheduled Leanne for surgery to remove the mass on October 1, 2020.

29. Leanne advised Gibbons either in person, via text, WhatsApp and/or by Phone of her diagnosis and surgery scheduled for October 1, 2020.

30. Leanne scheduled time to meet with Rad and Gibbons. Leanne and Gibbons met in person at SRR on Sunday September 20, 2020 to further discuss Leanne's upcoming surgery and anticipated course of action. Rad did not show up or call in for the meeting. The timeline, as far as Leanne knew on September 20, 2020 was that she would undergo surgery on October 1, 2020 to remove the tumor. Leanne asked Gibbons for leave to have her surgery and requested she be able to work remotely during the time required to recover from surgery and also for when she had chemotherapy. Leanne's chemotherapy was to be scheduled once every month. Leanne told Gibbons that she wanted to document her request for accommodation. Gibbons told Leanne that he had to talk to Rad and would get back with her.

31. Leanne did not foresee any problems in SRR granting her request for reasonable accommodation. Leanne had previously worked remotely without any interruption to SRR.

32. Leanne worked on location at SRR September 20, 2020 through September 28, 2020.

33. On September 28, 2020, Leanne went to the Emergency Room in Grand Junction, Colorado with swelling in her abdomen, fatigue, dizziness, and debilitating stomach cramps.

She was then transferred by ambulance to Anschutz Hospital in Denver, Colorado where she stayed until her surgery on October 1, 2020.

34.     Leanne had surgery on October 1, 2020.  The mass was removed, and the doctors confirmed it was malignant, the surgeon performed a complete hysterectomy and removed several diseased lymph nodes in addition to the tumor.  Leanne's official diagnosis was Stage 3 Small Cell Ovarian Cancer, hypercalcemic type.  This cancer is a relatively rare and highly fatal gynecological malignancy of unknown histogenesis.

35.     Leanne worked remotely from the hospital October 3, 2020 and after her discharge, worked remotely from her in-law's house October 4, 2020 through October 8, 2020 when she was suddenly terminated.

36.     Leanne asked Gibbons for an explanation.  Gibbons told her that she was being let go because "SRR needs someone on site immediately."

37.     Leanne had never been reprimanded or told that her performance was lacking.  To the contrary, during her 1:1 meetings with Gibbons, Leanne always asked him for feedback and was always told she was doing very well.  Prior to Gibbons, Leanne also asked Waters for feedback during their 1:1s.  Waters told Leanne she was doing well and never told her she was not performing up to anyone's standards.

38.     Leanne told Gibbons that she planned to be back at SRR in about one week- October 19, 2020-pending release from the doctor.  Gibbons reiterated that SRR needed someone "on-site" and that is why she was being fired.

39.     SRR has a progressive discipline policy, which Gibbons did not follow as it pertained to Leanne.  Per SRR policy, employees are to be given verbal and written warnings and

a final written warning prior to termination unless the conduct at issue involved something flagrant such as drug/alcohol issues, theft, violence, etc. Other employees had been disciplined and put on performance improvement plans and received write ups for various things and were not fired.

40. Leanne asked Gibbons if Levi's job was in jeopardy. He said it was not in jeopardy.

41. A few days later, Gibbons fired Levi as he turned in the paperwork for health insurance.

42. SRR did not follow its progressive discipline policy as to Levi either. He had never been disciplined, verbally or otherwise and he was never told anything other than he was doing a great job.

### FIRST CAUSE OF ACTION
### ADA- Discrimination – Leanne Crowe

43. The preceding paragraphs are incorporated herein by reference.

44. The ADA prohibits discrimination against people with disabilities in several areas, including employment, transportation, public accommodations, communications and access to state and local government' programs and services.

45. At all times relevant hereto, SRR was Leanne's "employer" and a "covered entity" within the meaning of the ADA.

46. Leanne was SRR's "employee" as that term is defined in the ADA, at all times relevant herein.

47. Leanne was diagnosed with cancer in late September 2020, which has substantially limited her major life activities, including but not limited to, her ability to regularly care for herself, perform manual tasks, walk, stand, sit, move and drive.

48. At all times relevant hereto, Leanne was qualified to perform the essential functions of her job and did, in fact, perform the essential functions of her job with or without reasonable accommodation.

49. The ADA prohibits discrimination against an individual because of disability.

50. SRR knew of Leanne's cancer related disability and terminated her employment because of her disability.

51. SRR's violation of the ADA has directly and proximately caused Leanne to suffer substantial past and future economic losses, including lost wages and benefits, damage to her career and reputation, emotional distress, humiliation and pain and suffering.

52. Leanne is entitled to make whole relief in the form of back pay and lost benefits, including recovery of her pecuniary and non-pecuniary damages, costs and attorneys' fees and other lawful damages in an amount to be determined at trial.

53. Further, because SRR's conduct was willful and malicious and manifested a knowing and reckless indifference toward and disregard of Leanne's federally protected rights, Leanne is entitled to an award of punitive damages in an amount to be determined by the jury.

## SECOND CAUSE OF ACTION
### ADA - Discrimination-Levi Crowe

54. The preceding paragraphs are incorporated herein by reference.

55. At all times relevant hereto, SRR was Levi's "employer" and a "covered entity" within the meaning of the ADA.

56. At all times relevant hereto, Levi was SRR's "employee" as that term is defined in the ADA.

57. Levi was well qualified for his position with SRR at all times employed by SRR.

58. When Leanne was diagnosed with ovarian cancer, Levi was of course distracted and asked for time off. However, he always performed to SRR's satisfaction and, other than working around Leanne's treatments, he continued working full-time for SRR.

59. Levi was subjected to an adverse employment action when, although he was an excellent employee, SRR fired him.

60. Levi's termination occurred under circumstances raising a reasonable inference that Leanne's disability was a determining factor in SRR's decision to fire him.

61. SRR fired Levi because of his association to Leanne in violation of the ADA.

62. SRR's violation of the ADA has directly and proximately caused Levi to suffer substantial past and future economic losses, including lost wages and benefits, damage to his career and reputation, emotional distress, humiliation and pain and suffering.

63. Levi is entitled to make whole relief in the form of back pay and lost benefits, including recovery of his pecuniary and non-pecuniary damages, costs and attorneys' fees and other lawful damages in an amount to be determined at trial.

64. Further, because SRR's conduct was willful and malicious and manifested a knowing and reckless indifference toward and disregard of Levi's federally protected rights, Levi is entitled to an award of punitive damages in an amount to be determined by the jury.

## THIRD CAUSE OF ACTION
### ADA – Retaliation - SRR

65. The preceding paragraphs are incorporated herein by reference.

66. The ADA prohibits employers from retaliating against an employee who has opposed any act or practice made unlawful by the ADA.

67. Leanne learned that she likely had ovarian cancer in September 2020 which was confirmed on October 1, 2020. She talked with Gibbons, told him her prognosis and requested reasonable accommodation to work remotely some of the time.

68. Leanne engaged in a protected activity by requesting accommodation for her disability.

69. SRR fired her.

70. The action of SRR in firing Leanne after she requested an accommodation for her own disability constitutes retaliation prohibited by the ADA.

71. SRR's actions has directly and proximately caused Leanne substantial past and future economic loss, including lost wages and benefits, damage to her career and professional reputation, humiliation, pain and suffering and emotional distress, in an amount to be determined at trial.

72. Further, because SRR's conduct was willful and malicious and manifested a knowing and reckless indifference toward, and disregard of Leanne's federally protected rights, entitling her to an award of punitive damages in an amount to be determined by the jury.

## FOURTH CAUSE OF ACTION
### ADA - Failure to Accommodate - SRR

73. The preceding paragraphs are incorporated herein by reference.

74. At all times relevant hereto, SRR was Leanne's "employer" and a "covered entity" within the meaning of the ADA.

75. At all times relevant hereto, Leanne was SRR's "employee" as that term is defined in the ADA.

76. Leanne was qualified to perform the essential functions of her job and did, in fact, perform the essential functions of her job with or without reasonable accommodation.

77. Leanne requested reasonable accommodations from SRR for her disability. Specifically, Leanne requested that she be able to work remotely (something she had already been doing successfully) and asked for a few days off each month for chemotherapy treatments.

78. SRR did not engage in any interactive process or take any measures to discuss Leanne's request and did not even attempt to make reasonable accommodations for Leanne.

79. Instead, SRR fired her without any explanation as to why it could not or would not accommodate her.

80. SRR's actions has directly and proximately caused Leanne substantial past and future economic loss, including lost wages and benefits, damage to her career and professional reputation, humiliation, pain and suffering and emotional distress, in an amount to be determined at trial.

81. Further, because SRR's conduct was willful and malicious and manifested a knowing and reckless indifference toward, and disregard of Leanne's federally protected rights, entitling her to an award of punitive damages in an amount to be determined by the jury.

## FIFTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress- SRR and Rad

82. The preceding paragraphs are incorporated herein by reference.

83. Leanne started working for SRR and Rad on April 6, 2020. She was well qualified for her job. Leanne was never disciplined in any manner until she told SRR and Rad of her cancer diagnosis.

84. On October 1, 2020 Leanne told SRR and Rad that she was diagnosed with an aggressive and rare ovarian cancer.

85. Leanne requested reasonable accommodation to work remotely when she had chemotherapy appointments.

86. SRR fired her seven days later and Rad's request.

87. SRR's and Rad's conduct in firing Leanne, leaving her without insurance was outrageous and intolerable.

88. SRR and Rad intended to cause Leanne emotional distress or acted with reckless disregard of the probability of causing emotional distress.

89. Leanne suffered severe or extreme emotional distress that was caused by SRR's and Rad's conduct.

90. SRR's and Rad's conduct was willful and malicious and manifested a knowing and reckless indifference toward, and disregard of Leanne's federally protected rights, entitling her to an award of punitive damages in an amount to be determined by the jury.

## SIXTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress – SRR and Rad

91. The preceding paragraphs are incorporated herein by reference.

92. Leanne started working for SRR and Rad on April 6, 2020. She was well qualified for her job. Leanne was never disciplined in any manner until she told SRR and Rad and of her cancer diagnosis.

93. On October 1, 2020 Leanne told SRR and Rad she was diagnosed with an aggressive and rare ovarian cancer.

94. Leanne requested reasonable accommodation to work remotely when she had chemotherapy appointments.

95. SRR fired her seven days later at Rad's request.

96. SRR and Rad engaged in conduct that it should have realized involved an unreasonable risk of causing emotional distress to Leanne.

97. SRR and Rad should have realized that its conduct in firing its employee who had just been diagnosed with ovarian cancer, could cause the sort of emotional distress that might result in illness or bodily harm.

98. SRR's and Rad's conduct intentionally caused Leanne to sustain emotional distress.

99. SRR's and Rad's conduct was willful and malicious and manifested a knowing and reckless indifference toward, and disregard of Leanne's federally protected rights, entitling her to an award of punitive damages in an amount to be determined by the jury.

## SEVENTH CAUSE OF ACTION
### Unjust Enrichment -Rad and JJ's

100. The preceding paragraphs are incorporated herein by reference.

101. Leanne was hired by SRR to work on behalf of SRR as its Director of HR for a salary of $95,000 per year.

102. Leanne accepted the offer and moved from Craig, Colorado with her two children in April 2020 to work at SRR.

103. During Leanne's first week, although Leanne was hired by SRR as its HR Director, Leanne was made to work on behalf of Rad and JJ's, as JJ's HR Director in addition to SRR.

104. JJ's is not affiliated with SRR in any way other than Rad owns both entities.

105. Rad is JJ's only Member.

106. Leanne worked on behalf of Rad and JJ's between 20-25 hours per week doing HR work, including onboarding employees and doing its payroll. In addition to working over full-time for SRR.

107. Rad and JJ's benefited from Leanne doing JJ's HR work but did not pay her any wages in exchange for the work she did.

108. Leanne was made to confer benefits to Rad and JJ's which Rad and JJ's accepted.

109. It is inequitable for Rad and JJ's to retain the benefits of Leanne's HR work without payment to Leanne of the value of her work.

110. Between April 2020 and October 2020, Leanne worked approximately 480 hours for and on behalf of Rad and JJ's.

111. It is not fair or equitable for Rad and JJ's to retain the benefit of approximately $22,500 which should have been paid to Leanne for her hourly work on behalf of Rad and JJ's.

112. Rad and JJ's should be required to compensate Leanne for its unjust enrichment received to Leanne's detriment in an amount of at least $22,500.

113. SRR's conduct was willful and malicious and manifested a knowing and reckless indifference toward, and disregard of Leanne's rights, entitling her to an award of punitive damages in an amount to be determined by the jury.

### EIGHTH CAUSE OF ACTION
### Unpaid Wages-FLSA-Rad and JJ's

114. The preceding paragraphs are incorporated herein by reference.

115. Rad is the only member of JJ's and at all times relevant herein, was an "employer" as that term is defined under the FLSA.

116. JJ's, at all times relevant herein, was an "employer" as that term is defined under the FLSA.

117. At all times relevant herein, Leanne was an "employee" of Rad and JJ's, as contemplated in the FLSA.

118. Leanne was made to work on behalf of Rad and JJ's and did work on behalf of Rad and JJ's between 20 and 25 hours per week.

119. The FLSA requires an employer to pay employees for their work and such pay must equal at least minimum wage.

120. SRR determined that the value of Leanne's work as its Director of HR equaled $95,000 per year-or $47.50 per hour.

121. Between April 2020 and October 2020, Leanne worked approximately 480 hours for and on behalf of Rad and JJ's and should have been paid $47.50 per hour for each hour she worked on behalf of Rad and JJ's.

122. Rad and JJ's owe Leanne her unpaid wages of not less than $22,500.

123. Rad and JJ's owe Leanne $22,500 as liquidated damages for intentionally failing to pay Leanne fair wages for working on behalf of Rad and JJ's.

124. As a result of Rad's and JJ's violations of the FLSA, Leanne is entitled to recover all reasonable attorneys' fees and costs in bringing this action.

125. As a result of Rad's and JJ's intentional and willful violations of the FLSA, Leanne is entitled to awards of pre-judgment interest, post-judgment interest, punitive damages and all other damages recoverable under the provisions of the FLSA.

## REQUEST FOR JURY TRIAL

Plaintiffs request a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## CONCLUSION & REQUEST FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

a. For a ruling and judgment in Plaintiffs' favor and against Defendants for all causes of action asserted herein;

b. For all wages, compensation and other economic benefits lost as a result of the actions and omissions of Defendants;

c. For all special and general damages available to Plaintiffs, including pecuniary and non-pecuniary losses;

    d.    For an award of attorney's fees and costs, as allowed by the foregoing claims;

    e.    For awards of punitive damages and liquidated damages;

    f.    For prejudgment and post-judgment interest as allowed by law; and

    g.    For such additional and other relief, the court deems just and equitable.

Respectfully submitted this 1st day of November 2021.

      /s/ Michele Anderson-West
Michele Anderson-West
STAVROS LAW P.C.
*Attorneys for Plaintiffs*